**Singh Realty, LLC v. Stroud Township Zoning
Hearing Board**

*Joseph P. McDonald, Jr.*, for appellant.
*Marc R. Wolfe*, for appellee.

ZULICK, *J.*, March 26, 2014—This matter comes before the court on the land use appeal of Singh Realty, LLC (Singh). Singh sought to build a four story Fairfield Inn & Suites by Marriott (Fairfield Inn) on a vacant parcel of land known as Bartonsville Plaza Condominium Unit Number 3. Before building the hotel, Singh sought several variances from the Stroud Township Zoning Hearing Board (ZHB). Public hearings were held on October 9, 2013. At that time the ZHB voted verbally to approve some of the variances requested, while declining two others. The two that were denied were a variance from the 30 foot maximum height of a wall sign requirement and a variance from the maximum letter height of a wall sign.

Singh requested and received permission to reopen the record and provide additional evidence before the ZHB rendered its written decision. The ZHB heard additional testimony on November 6, 2013, but after this hearing the board again denied the requested variances. Singh timely appealed the ZHB's decision. There are no intervenors. Both parties have briefed their positions, and the matter was argued before the court on February 1, 2014.

## DISCUSSION

"In reviewing the decision of a zoning hearing board where the trial court has not taken any additional evidence, as occurred here, our review... is limited to

determining whether the board abused its discretion or committed a legal error." *Smalley v. Zoning Hearing Bd. of Middletown Tp.*, 834 A.2d 535, 538 (Pa. 2003). "An abuse of discretion will be found only where the zoning board's findings are not supported by substantial evidence. By substantial evidence we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Valley View Civic Ass'n. v. Zoning Bd. of Adjustment*, 462 A.2d 637 (Pa. 1983)). "It is well settled that a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference from a reviewing court." *Lancaster Twp. v. Zoning Hearing Bd. of Lancaster Twp.*, 6 A.3d 1032, 1034 (citations omitted). This judicial deference results from the knowledge and expertise a zoning board has in interpreting the ordinance they administer. *Id.*

Singh requested two variances. The first was to install a wall sign 47 feet high when the ordinance allowed a wall sign to be no higher than 30 feet. The second was to enlarge the letters of the wall sign. Singh requested sign letters approximately 84 inches tall when the ordinance allowed letters to be approximately 72 inches tall.

The Stroud Township Zoning Ordinance (ordinance) governs the requested variances and provides as follows:

The height of a Wall Sign shall not exceed the height of the building facade to which it is attached; however in no case shall a wall sign exceed thirty (30 ft.) in height. Wall Signs shall be compatible with the architectural motif of the building to which they are attached. No

wall sign shall cover or interrupt major architectural features.

Ordinance §9.1271.

Ordinance § 9.1278 provides a formula to determine the maximum letter height of a wall sign. This is computed based on the distance between the wall facade and the nearest public road or main entrance driveway. The ordinance would allow a maximum letter height of 72 inches on a sign with three rows of letters.

The requirements for a variance are set out in 53 P.S. § 10910.2. It states, in pertinent part, that a variance will only be granted in circumstances:

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the zoning ordinance and that the authorization of a variance is therefore necessary to enable the reasonable use of the property.

(3) That such unnecessary hardship has not been created

by the appellant.

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare.

(5) That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

53 P.S. §10910.2.

The ZHB denied the variance requests. The ZHB's logic was as follows, in pertinent part: "(a)side from the applicant's strong preference to satisfy the Marriot Corporation's custom standards for sign height and architectural appearance, the only other basis for a wall sign height variance is the applicant's preference for greater visibility for the motoring public on PA Route 611." Decision of the zoning hearing board at 10. After discussing testimony to the effect that Singh owns and operates another hotel with similar signage problems, which suggested to the ZHB that the property in this matter could be developed in strict conformity with the ordinance, they stated; "...the Board feels that the proposed height variance is merely for the business and commercial preference of the Applicant and the Applicant's Architect and is not essential to enable the reasonable use of the property." *Id.* at 12.

Singh argues that the sign for the proposed hotel cannot be read from the nearby highway (Route 611) without variances for height and letter size. This, Singh contends, is an undue hardship. Singh argues that this hardship is due to "topographic and manmade obstructions not caused by [himself]." Brief of appellant at 12. It is undisputed that the property he proposes to build on is blocked from highway visibility by preexisting commercial buildings. Singh relies on *Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 721 A.2d 43 (Pa. 1998). In *Herzberg*, Miryam's, a non-profit organization which provided shelter and services to homeless women, sought zoning approval to convert an unused 4 story building into a lodging house. Because the building Miryam's sought to use lacked the required amount of square footage and parking spaces for a lodging house of its proposed size, zoning approval was required. The zoning hearing board granted the variances, and the trial court affirmed.

The Commonwealth Court reversed, stating: "Absent a showing that the property cannot be used in a way and for a purpose consistent with the zoning ordinance, there is not the unnecessary hardship required for the grant of a variance." *Id.* at 47 (quoting Slip Opinion of Commonwealth Court). The Supreme Court reversed, stating: "We find that the instant matter is an appropriate case to make a formal declaration that the quantum of proof required to establish unnecessary hardship is indeed lesser when a dimensional variance, as opposed to a use variance, is sought." *Id.* at 47-48.

This relaxation of the proof required to show hardship

in dimensional variance cases has been the subject of much discussion since *Hertzberg*:

> while *Hertzberg* eased the requirements for granting a variance for dimensional requirements, it did not make dimensional requirements, as Keystone's position suggests, "free-fire zones" for which variances could be granted when the party seeking the variance merely articulated a reason that it would be financially "hurt" if it could not do what it wanted to do with the property, even if the property was already being occupied by another use. If that were the case, dimensional requirements would be meaningless — at best, rules of thumb — and the planning efforts that local governments go through in setting them to have light, area (side yards) and density (area) buffers would be a waste of time.

*Society Created to Reduce Urban Blight v. Zoning Bd. of Adjustment of the City of Philadelphia*, 771 A.2d 874, 877 (Pa. Cmwlth. 2001). An examination of cases decided after *Hertzberg* supports the ZHB's decision not to grant the variances.

In *Yeager v. Zoning Hearing Bd. of the City of Allentown*, 779 A.2d 595 (Pa. Cmwlth. 2001), the Commonwealth Court was faced with similar circumstances. The property owner wished to build a car dealership on the disputed property, specifically a Land Rover dealership.

> [Daniels] acknowledged the building, which is proposed to be set back 120 feet from Tilghman Street, could have been moved closer to Tilghman Street,

where a set back of 30 feet is required, but elected not to do so because locating it closer to Tilghman Street would have encroached upon desired parking and display space at the front of the property. Alternatively, [Daniels] also acknowledged a 5,000 square foot building would fit on the property without the necessity of a variance, and did not try to design a building smaller than 10,000 square feet because Land Rover would not have approved it. Thus, the topographical condition of the property interfered with the ability to comply with the zoning regulations only to the extent the building had to be 10,000 square feet and [Daniels] insisted it be located at a particular place on the property.... [T]he hardship here was not created by the land, but by [Daniels'] insistence the building be 10,000 square feet and it not encroach upon desired parking or display space at its front.

*Id.* at 597 (quoting Slip Opinion of Common Pleas Court). The Commonwealth Court affirmed the denial of the variance:

Ever since our Supreme Court decided *Hertzberg*, we have seen a pattern of cases arguing that a variance must be granted from a dimensional requirement that prevents or financially burdens a property owner's ability to employ his property *exactly as he wishes*, so long as the use itself is permitted. *Hertzberg* stands for nothing of the kind. *Hertzberg* articulated the principle that unreasonable economic burden may be considered in determining the presence of unnecessary hardship, it

may also have somewhat relaxed the *degree* of hardship that will justify a dimensional variance. However, it did not alter the principle that a substantial burden must attend *all* dimensionally compliant uses of the property, not just the particular use the owner chooses. This well-established principle, unchanged by *Hertzberg*, bears emphasizing in the present case. A variance, whether labeled dimensional or use, is appropriate "only where the *property*, not the person, is subject to hardship." In the present case, Daniels' property is well suited to the purpose for which it is zoned and actually used, a car dealership, which is in no way burdened by the dimensional requirements of the ordinance. Daniels has proven nothing more than that adherence to the ordinance imposes a burden on his personal desire to sell vehicles for Land Rover.

*Id.* at 598 (quoting *Szmigiel v. Kranker*, 298 A.2d 629, 631 (Pa. Cmwlth. 1972)) (italicized emphasis in original, bolded emphasis added). Here, the property is likewise well suited to the proposed use, a hotel. However, the burden, if it can be said to exist, is only there because signs on the facade of the building can't be seen from Route 611 and the marketing directives of Marriott, which requires a strict degree of conformity in all their franchised hotels.[1]

The case of *Society Created to Reduce Urban Blight v.*

_____

1. The testimony before the ZHB established that Marriott requires all their hotels to be built and appear substantially the same. *See* NT November 6, 2013 at 27-30. For example, "the front building sign cannot be located in any location other than the parapet above the fourth floor at the main entrance since to do so would result in spillover illumination into a guest window and so on." *Id.* at 29-30.

*Zoning Bd. of Adjustment of the City of Philadelphia*, 771 A.2d 874, 874 (Pa. Cmwlth. 2001) is directly on point. In *Society to Reduce Urban Blight*, Keystone Outdoor Advertising Company applied for a variance to allow a free standing sign. The proposed sign was 2400 square feet (the ordinance governing the sign allowed a maximum of 1500 square feet) and was located 660 feet away from the Walt Whitman Bridge. As here, the purpose of the variance request was to enable motorists to see the sign from a main highway. The zoning hearing board granted the variance requests, but the trial court reversed.

The Commonwealth Court affirmed the trial court's reversal, stating:

> In this case, no severe undue hardship was articulated because even using the *Hertzberg* standard, no evidence exists that warrants the grant of the dimensional variance. The variance to increase the size of Keystone's sign board from 1,500 square feet to 2,400 square feet is not justified just so it can be seen from a road; requiring a larger sign just means that the lot on which the sign is located is too far from the road.

*Id.* at 878. Indeed, the Commonwealth Court reiterated that maximizing the wealth or revenue generated by a property is not a sufficient reason to grant a variance. "*Hertzberg* still requires an applicant to prove an unnecessary hardship and all that Keystone has done is show that the sign is necessary to maximize the profit of the landowner, [therefore] the trial court's decision reversing the Board's grant of a variance is affirmed." *Id.*

Here, it is undoubtedly true that having a hotel sign that can be seen from Route 611 would increase revenue and profitability for Singh's proposed hotel. However, Singh has not carried his burden of proof for a variance, because there are no unique physical circumstances of the property creating undue hardship. If Singh's argument were successful, where would the right to have a larger sign visible from a distant road end? Stroud Township may have decided that it was not appropriate from a planning perspective to have increasingly higher signs on buildings or poles as properties are located farther from a main highway.

Singh next argues that because the ZHB granted similar variances to other nearby properties, it is compelled to do so in this case. This analysis is not supported by the law. "[T]he fact that earlier variances were granted in the [applicable zoning] district does not necessarily dictate the approval of another application, for variances are granted on a case-by-case basis..." *Pietropaolo v. Zoning Hearing Bd. of Lower Merion Tp.*, 979 A.2d 969, 982 (Pa. Cmwlth. 2009) (quoting *Appeal of deBotton*, 474 A.2d 706, 711 (Pa. Cmwlth. 1984)). The ZHB determined this land use appeal on its own merits. It was not bound by earlier decisions, even if they appear to be similar. For the foregoing reasons, the ZHB will be affirmed.

Finally, Singh requests the court to reverse the ZHB denial of variances requested for wall signs on the east and west facades of the hotel. These variances were denied by motion of the ZHB following the board's October 9, 2013 hearing. NT 139, October 9, 2013. At the commencement

of the hearing conducted on November 6, 2013, where the board reconsidered its decision and took additional testimony, Singh withdrew its request for sign variances for signs on the east and west facades of the proposed hotel building, through its counsel's statement on the record. NT 6, November 6,2013.

The ZHB again denied variances for signs on all facades of the hotel when its vote was taken following the November hearing. NT 68-69, November 6, 2013. This decision was included in the written decision of the ZHB. This was error, as the request for those variances had been withdrawn. The only request for a variance of a wall sign before the ZHB at the time of its decision on November 6, 2013 was the requested variance for the sign above the main entrance on the southern facade of the building.

## ORDER

And now, this 26th day of March, 2014, upon consideration of the land use appeal of Singh Realty, LLC, and the arguments and briefs of the parties, it is ordered as follows:

1. The decision of the Stroud Township Zoning Hearing Board to deny a sign variance for the eastern and western facades of the proposed hotel is reversed. Those variance requests were withdrawn by the applicant during the November 6, 2013 hearing and were not before the zoning hearing board for decision.

2. In all other respects, the appeal of Singh Realty, LLC is denied and the decision of the Stroud Township Zoning Hearing Board is affirmed.